## Commonwealth v. Trayer

*Robert W. Feeman, Assistant District Attorney,* for Commonwealth.

*Keith L. Kilgor* and *Richard D. Atkins,* for defendant.

GATES, *P.J.,* July 2, 1980—Walter Trayer (otherwise known as H. J. Duke[1]) is charged in two informations with violations of the controlled substance laws of Pennsylvania, namely the possession with intent to deliver or sell 357 pounds of marijuana and 20 pounds of hashish. Additionally, he is charged with criminal conspiracy in connection with the controlled substance violations.

An omnibus pretrial motion for relief has been filed and we held hearings on April 23 and 24, 1980 at which time defendant and the Commonwealth presented witnesses.

---

1. Or H. J. Duke (otherwise known as Walter Trayer). On the record so far compiled, this quandary has not been explained to us. Action No. 668 charges Walter Trayer while Action No. 667 charges H. J. Duke with the identical offenses.

At the conclusion of the hearing we instructed counsel to submit briefs on those points raised in the omnibus pretrial motion which remained unresolved. We shall consider the unresolved motions seriatum.

. . .

## CONSTITUTIONAL ISSUE

In count 2 of defendant's omnibus pretrial motion he seeks to quash the information on the grounds that The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, sec. 1 et seq., as amended, 35 P.S. §780-101 et seq., is unconstitutional as applied to marijuana. He expands his argument by contending that marijuana has a currently accepted medical usefulness; that it does not have a high potential for abuse as compared to other drugs appearing on Schedule I; that marijuana presents fewer health problems than alcohol and tobacco which are not controlled under the Drug, Device and Cosmetic Schedules and, consequently, the statute is irrational and arbitrary under the Equal Protection Clause.

To support his argument he produced several witnesses to testify as to the effectiveness of marijuana in controlling the violent and debilitating nausea and vomiting that usually accompanies cancer chemotherapy. He also produced a witness, Robert C. Randall, who testified as to his use of marijuana under a doctor's care to control open angle glaucoma. Another witness, Frederick J. Goldstein, who holds a Ph.D. in pharmacology testified that recent medical studies show marijuana's usefulness in treating glaucoma and nausea caused by chemotherapy "as well as promises in such other areas as asthma." However, the Commonwealth produced a medical doctor, Robert

Kline, who testified, in essence, that there are an equal number of medical articles that attest to the fact that there are adverse and toxic effects from the long-term use of marijuana and that, based on studies, he would not prescribe marijuana for the treatment either of glaucoma or the side effects of chemotherapy.

Counsel for defendant, in response to our inquiry, acknowledged that Trayer's defense was not based on the theory that possession of the marijuana was for medical purposes or that the alleged selling of marijuana was to persons suffering from glaucoma, the side effects of chemotherapy or asthma. His defense simply is that he was not in possession of the marijuana as charged.

At the outset we note that defendant urges that we measure the challenged statutory proscription, not against the specific conduct involved in this case, but against hypothetical conduct that the statutory language could arguably embrace. To do so, however, would require us to adjudicate the rights of parties not presently before the court, at the insistence of a party who does not have standing to assert such rights. It is for this reason that facial attacks on the constitutionality of statutes are not generally permitted: United States v. Powell, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed. 2d 228 (1975). Absent an assertion of an infringement of the First Amendment freedoms, the constitutionality of a statute must be measured against the conduct in which the party challenging the statute has engaged or is alleged to have engaged. Thus, it is evident that this defendant has no standing to challenge Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act.

Even if we were to assume defendant has standing to challenge the constitutionality of this act, we

are unpersuaded by his argument. There are four well-settled principles which control judicial review of legislation such as this: (1) courts must act with restraint when challenges are made to legislative action; (2) significant weight is accorded to legislative fact-finding; (3) challenges to statutes bear a heavy burden; and (4) statutes such as the instant one must be sustained unless shown to have no rational basis.

Today's scientists may struggle with the definitions, theory and effect of marijuana, and others may preach of liberalization and reform. However, my obligation is to perform under the mandate of the legislature and this I will do. The legislature has classified marijuana as a Schedule I controlled substance and as such it has assigned more severe penalties than the drugs listed on other schedules. We will not presume that the legislature acted out of ignorance or irrationality. The Pennyslvania Controlled Substance, Drug, Device and Cosmetic Act closely tracks the Uniform Controlled Substance Acts adopted in almost every state in the United States. It compares favorably to the Federal Drug Abuse Prevention and Control Act of October 27, 1970, 84 Stat. 1242, 21 U.S.C.A. §801. Having determined that marijuana has a high potential for abuse, no currently accepted medical use in the United States,[2] and a lack of accepted safety for use under medical supervision, the legislature specif-

2. While impressed with the testimony of defendant's witnesses Richard Csandl, Robert Randall and Dr. Frederick Goldstein, their views, experiences and opinions should be addressed to the legislature, not the courts. Upon such confrontation, we are comfortable with the thought that there will be diverse views, experiences and opinions. See Roger A. Roffman's paper (Def. Exh. 13). Hepler and Petrus' paper (Def. Exh. 9).

ically placed marijuana in Schedule I. Defendant has not demonstrated to us that this is irrational or arbitrary.[3] This analysis of our role in reviewing the scheduling of dangerous drugs has been approved and followed both in the Federal court system and in a number of the states. See People v. Riddle, 65 Mich. Ct. App. 433, 237 N.W. 2d 491 (1975); Raines v. State of Florida, 225 So. 2d 330 (1969); National Organization For Reform of Marijuana Laws v. Gain, 100 Cal. App. 3d 586, 161 Cal. Rptr. 181 (1979); U.S. v. Harper, 530 F. 2d 828 (9th Cir. 1976); U.S. v. Smaldone, 484 F. 2d 311 (10th Cir. 1973).

Based on all of the above, we find no basis to hold Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act unconstitutional as applied to marijuana and hashish.

•  •  •

## ORDER

And now, July 2, 1980, defendant's omnibus pretrial motion is refused in accordance with the foregoing opinion.

---

3. We reject defendant's argument that the inclusion of marijuana and the exclusion of alcohol, tobacco and caffeine in Schedule I is arbitrary. Section 3 of the Act (35 P.S. § 780-103) permits the Secretary of Health to add a substance to the schedule of controlled substances either on his own motion or that of an interested party, provided it meets the standards set forth in section 4: 35 P.S. § 780-104.